## ALDEN v. KARRICK ET AL.

Plaintiff sold to K. an interest in certain mines. As part of the purchase price K. assumed and agreed to pay certain incumbrances against the property, and agreed that, after reimbursing himself for such payment from the proceeds of the property, he would pay plaintiff $25,000 as fast as the same could be realized from the property. K. took possession of the property, and fifteen days later sold it to H., without the knowledge or consent of plaintiff. In an action by plaintiff against K. and H. to recover the $25,000, *held*, that a complaint which failed to allege that the sale by K. to H. was fraudulent or unreasonable, or that K. realized, or could have realized, either by a sale of the premises or by working them, a surplus above the incumbrances assumed by him, did not state a cause of action.

*Error to District Court of Pueblo County.*

ON August 15, 1883, the plaintiff in error, by his deed, conveyed to the defendant in error, Karrick, an interest in certain mining claims in Gunnison county. The deed contained the following provision: "Subject to all the incumbrances against said property, as evidenced by the trust deeds thereon, which indebtedness the party of the

second part hereby assumes and agrees to pay. Also subject to the terms, conditions and agreements contained in a certain contract this day entered into between the parties hereto." The said agreement referred to was in writing, and as follows: "This memorandum of agreement, made and entered into this 15th day of August, A. D. 1883, by and between B. F. Karrick, of the county of Pueblo, in the state of Colorado, party of the first part, and Hiram O. Alden, of the county and state aforesaid, party of the second part, witnesseth, that for and in consideration of the execution and delivery, by the said second party to the said party of the first part, of a mining deed conveying to the said party of the first part all the right, title and interest of the said Alden in and to an undivided seven-sixteenths (7–16) in and to the Silent Friend and Robinson and Ferry lodes, as more particularly described in said deed, and upon conditions in said deed set forth, the said party of the first part agrees and binds himself, his heirs, his executors, administrators and assigns, firmly by these presents, to pay the floating and mortgage indebtedness upon said mines and lodes, and that after the repayment to himself of the sum of money necessary to pay the floating and mortgage indebtedness (that is to say, the portion of the same for which the said second party is liable) upon said above-mentioned and described lodes and mining claims, he, the said party of the first part, will, out of the net proceeds of said mines or lodes, whether realized by working said claims and shipping ore therefrom or from a sale of the same, pay to the said party of the second part the sum of twenty-five thousand dollars ($25,000) cash as soon as the said sum of money shall have been realized from said mining premises and lodes as aforesaid. And it is further agreed that the said first party shall, after having reimbursed himself for the outlay of money hereinbefore mentioned, pay the sum of $25,000 to the said party of the second part, in instalments of $5,000, as soon as such sum of money shall be

realized from said mining premises, and said instalments to be paid successively as often as the sum of $5,000 shall be realized from said premises as aforesaid, and until the total sum of $25,000 shall have been paid as aforesaid. And it is further agreed that until said sum of $25,000 shall have been paid in full as aforesaid, the said party of the second part shall, at all reasonable times of the day or night, either in person or by proxy, have free access to said mining premises and the underground workings of the same, with full power and authority to examine and inspect the same; and that he, the said second party, shall also, at all reasonable times, have full right to ex· amine the books of said mines, or any person or persons working and managing the same. And the said first party further agrees to work and mine said above-mentioned lodes in a good and workmanlike fashion, and as economically as possible, with due regard to the proper development of said mining premises." Karrick then took possession of the premises, and about fifteen days afterwards sold and delivered the same to James W. Hanna, without the knowledge or consent of the plaintiff in error. Upon December 31, 1883, the plaintiff in error commenced this action upon the assumption that a sale of the premises by Karrick made him liable for the payment of the $25,000 named in the contract, without regard to the productive capacity of the mines, or to the amount realized by such sale, and the allegations of the complaint were accordingly framed, and in the complaint the terms of the said deed and contract were set forth. A demurrer thereto was sustained, whereupon final judgment was rendered against plaintiff. Exceptions were taken, and the case comes here on writ of error.

Messrs. PITKIN and RICHMOND and C. E. GAST, for plaintiff in error.

Messrs. J. M. WALDRON and R. D. THOMPSON, for defendants in error.

STALLCUP, C.  It is apparent, from the terms of the contract, that Karrick was vested with ownership in and dominion over the interest conveyed to him by Alden, and that he was accordingly to keep and work or sell the same, to the end to reimburse himself for the debts by him assumed and paid, and to realize such further sums as he might thereby; with the proviso that out of such further sums so realized the same should go to the liquidation of the said $25,000.  In the event of a sale the working of the mines by him would necessarily cease, but until a sale he was required to work the mines to the payment of said sum, at least so long as productive and profitable to that end.  The liability to pay any part of the $25,000 was limited by the express provisions of the contract to the net surplus above the debts assumed, which Karrick might be able to realize, either by a sale of this interest in the mines or by working the same.  In order, therefore, to show a cause of action for a breach of this contract, it must appear from the complaint that such surplus was so realized, or that it could have been so realized.  Thirty-eight thousand dollars was the amount of the debts assumed by Karrick.  It will be seen that he was bound to pay this amount in any event, and that this seven-sixteenths interest in the mines conveyed to him constituted the only means for a return to him of this amount.  A construction of the contract to the effect to deprive Karrick of this means of paying himself without paying the additional $25,000 would leave him helpless and the loser of $38,000, in case this interest in the mines was incapable of yielding the net surplus of $25,000.  The language of the contract will not permit of any such unreasonable construction.  If this interest in the mines was incapable of yielding any part of such surplus, by sale or working the same, then appellant has not been injured, and has no cause of action.  In the complaint there is no allegation or claim that the mines ever had returned to Karrick, by sale or

otherwise, the amount assumed and paid out by him, or that the mines were at all capable of producing a net profit for any purpose, either by selling them or by working them.   There being no allegation of facts in the complaint showing that the said sale was fraudulent, or that it was not reasonable, or that said interest was capable of producing a net yield greater than the amount of the debts assumed and paid by Karrick, or that by the said sale enough had been realized, or could have been realized, to produce a surplus over and above such debts, the complaint was properly adjudged insufficient to show a cause of action, and the demurrer thereto was therefore properly sustained.   *Toombs v. Mining Co.* 15 Nev. 444.

The judgment should be affirmed.

DE FRANCE, C., concurs.   RISING, C., dissents.

PER CURIAM.   For the reasons assigned in the foregoing opinion the judgment of the district court is affirmed.

*Affirmed.*